UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
CARLOS OTERO AND DANIEL OTERO

                                      Plaintiff,    FIRST AMENDED
COMPLAINT AND
-against-                                    JURY DEMAND

THE CITY OF NEW YORK, POLICE OFFICER
MATTHEW GALE, SHIELD #05617, POLICE OFFICER
RICHARD SURIEL, SHIELD #13059; POLICE OFFICER    Docket No. 13CV454(JSR)
MANISH SHARMA, SHIELD #10192; POLICE
SERGEANT DERVENT WILLIAMS, SHIELD #1719;
POLICE OFFICER DELILAH CANCEL, SHIELD
#12190; JOHN DOES #1-12

                                  Defendants.

------------------------------------------------------------------- x

Plaintiffs CARLOS OTERO AND DANIEL OTERO, by their attorneys, Stoll, Glickman & Bellina, LLP, for their complaint allege as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiffs seek relief through 42 U.S.C. §1983 for the violation of their Fourth and Fourteenth Amendment rights.

2. The claim arises from April 22, 2012 and April 25, 2012 incidents in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiffs to, among other things, excessive force, false arrest, and false imprisonment.

3. Plaintiffs seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action arises under the Fourth and Fourteenth Amendments to the United States

Constitution and under 42 U.S.C. §1983 and §1988.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6. The amount in controversy exceeds $75,000.00 excluding interest and costs.

## VENUE

7. Venue is laid within the Southern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Southern District.

## PARTIES

8. Plaintiff Carlos Otero is a citizen of the United States, and resided at all times here relevant in Bronx County, City and State of New York. Plaintiff Carlos Otero is Daniel Otero's older brother.

9. Plaintiff Daniel Otero is a citizen of the United States, and resided at all times here relevant in Bronx County, City and State of New York. Plaintiff Daniel Otero is Carlos Otero's younger brother.

10. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

11. Officer Matthew Gale, Shield #05671, was at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, defendant Gale was involved in the illegal arrest of plaintiffs and/or failed to intervene in the actions of his fellow officers when he observed them violating plaintiffs' fourth and fourteenth amendment rights without provocation. On information and belief, at all times relevant hereto, defendant Gale was under the command of the 41st precinct and is sued in his individual capacity.

12. Officer Richard Suriel, Shield #13059, was at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, defendant Suriel was involved in the illegal arrest of plaintiff and/or failed to intervene in the actions of his fellow officers when he observed them violating plaintiff's fourth and fourteenth amendment rights without provocation. On information and belief, at all times relevant hereto, defendant Suriel was under the command of the 41st precinct and is sued in his individual capacity.

13. Officer Manish Sharma, Shield #10192, was at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, defendant Sharma was involved in the illegal arrest of plaintiff and/or failed to intervene in the actions of his fellow officers when he observed them violating plaintiff's fourth and fourteenth amendment rights without provocation. On information and belief, at all times relevant hereto, defendant Sharma was under the command of the 41st precinct and is sued in his individual capacity.

14. Officer Dervent Williams, Shield #1719, was at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the

City of New York. On information and belief, defendant Williams was involved in the illegal arrest of plaintiff and/or failed to intervene in the actions of his fellow officers when he observed them violating plaintiff's fourth and fourteenth amendment rights without provocation. On information and belief, at all times relevant hereto, defendant Williams was under the command of the 41st precinct and is sued in his individual capacity.

15. Officer Delilah Cancel, Shield #12190, was at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, defendant Cancel was involved in the illegal arrest of plaintiff and/or failed to intervene in the actions of his fellow officers when he observed them violating plaintiff's fourth and fourteenth amendment rights without provocation. On information and belief, at all times relevant hereto, defendant Cancel was under the command of the 41st precinct and is sued in his individual capacity.

16. All other individual defendants ("the officers"), including John Doe #1-12, individuals whose names are currently unknown to plaintiff, are employees of the NYPD, and are sued in their individual capacities.

17. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL ALLEGATIONS

18. Carlos Otero is employed at a small grocery store located at 1126 Westchester Avenue, Bronx New York. The store is open 24 hours a day, and plaintiff frequently works the overnight shift.

19. At approximately 2:30 am on April 22, 2012 plaintiff Carlos Otero was working at the

grocery store located at 1126 Westchester Avenue.

20. Plaintiff Daniel Otero was also present at the grocery store that night, visiting with his older brother.

21. While plaintiffs were standing immediately outside the grocery store, they witnessed an argument between two men. One of the men was known to plaintiffs as "Edwin" and the other was unknown to them.

22. Following the heated argument, the unknown man walked away from the store and Edwin remained.

23. Minutes later the unknown man returned to the store front and demands that Edwin come with him. Edwin refused and the man left again.

24. Minutes later three more men approached the store front. Plaintiffs were not able to identify these men either that night or later.

25. Carlos Otero reentered the store as the men approached.

26. As they arrived at the store front, one of the three men drew a pistol, pointed it at Edwin and pulled the trigger three times.

27. Plaintiffs heard soft clicks the first two times the man pulled the trigger, and a loud discharge at the third pull of the trigger.

28. Edwin was hit by at least one shot from the gun and immediately fell backwards into the store.

29. The three unknown men walked quickly away from the store front.

30. Daniel Otero entered the store, and plaintiffs then shut and locked the door to protect themselves and Edwin.

31. Daniel Otero escorted Edwin to the back of the store where he attempted to help treat

his wounds.

32. Carlos Otero called 911 and requested that police and an ambulance be dispatched to the store.

33. After a few minutes when police had not arrived, Carlos Otero emerged from the store and flagged down a passing patrol car.

34. Within minutes, a large number of police officers had arrived on the scene.

35. Plaintiffs showed police and ambulance personnel to Edwin.

36. Edwin remained conscious through the whole process. When police arrived he spoke to them briefly, then walked under his own power to the ambulance and was removed from the scene.

37. After Edwin left the scene, plaintiffs described what they had seen to the defendants.

38. Upon information and belief, at no time did defendants suspect plaintiffs had been the perpetrators of the shooting. Moreover, it was objectively unreasonable under the circumstances to believe that plaintiffs had been anything other than witnesses to the shooting.

39. Plaintiffs explained multiple times that they saw the shooter approaching, but never saw his face and could not identify him.

40. Without provocation, defendants physically grabbed hold of Carlos Otero and pushed him forcibly against a wall.

41. Carlos Otero at no time posed any threat to any officer, nor did he act in an aggressive or disorderly manner, nor did he engage in any behavior which could reasonably lead defendants to belief it was necessary to use force against him.

42. Daniel Otero verbally questioned what the officers were doing to his brother.

43. Daniel Otero did not interfere with the defendants' seizure of his brother at any time.

44. Defendants threw Daniel Otero to the ground, surrounded him, and kicked and punched him multiple times while he lay face down on the ground.

45. At no time did Daniel Otero resist arrest or take any other action which would justify the use of force against him.

46. Plaintiffs were both placed under arrest and taken to the police precinct.

47. At the precinct Carlos Otero was handcuffed to a bench in a small room.

48. Carlos Otero repeatedly asked to be allowed to leave, and why he was being held. He was told by defendants that he was being held as a witness.

49. For approximately six to seven hours Carlos Otero was questioned by defendants.

50. Carlos Otero was repeatedly asked for an identification or a description of the shooter. He explained repeatedly that he had not seen the shooter's face, could not provide any more information, and that he did not wish to remain there.

51. After six to seven hours of questioning, Carlos Otero was told he was being given a ticket for disorderly conduct and he was released from the precinct.

52. This charge of disorderly conduct was brought even though defendants lacked probable cause to believe Carlos Otero had committed any crime.

53. At the precinct, Daniel Otero was fingerprinted and placed in a cell.

54. Daniel Otero was questioned regarding whether he could identify or describe the shooter, but he explained he could not.

55. Daniel Otero requested medical treatment for the injuries he suffered when the defendants physically struck him. After several hours he was taken to Lincoln Medical Center where he was treated for the injuries he suffered.

56. After several hours at the hospital, Daniel Otero was returned to the precinct, and then

taken to central booking for arraignment.

57. While at central booking, Daniel Otero was placed in a holding cell with a large number of other prisoners awaiting arraignment.

58. One of the prisoners in the holding cell was the unknown man whom Daniel Otero witnessed in an argument with Edwin immediately before the shooting.

59. This unknown man greeted Daniel Otero in an intimidating manner, causing him to be afraid and suffer additional emotional trauma.

60. Daniel Otero was charged with obstructing governmental administration and resisting arrest. These charges were brought even though defendants lacked probable cause to believe plaintiff had committed any crime.

61. Daniel Otero was released on his own recognizance at approximately 9:00 am on April 23, 2012. He spent approximately 30 hours in police custody.

62. On April 25, 2012 at approximately 11:00 am Carlos Otero was again working in the same grocery store.

63. Defendants, including Officer Suriel entered the store and began questioning Carlos Otero about whether he knew anything more about the shooting.

64. Carlos Otero told the officers that their questions were making him nervous after what he had been through two days prior.

65. Deféndants asked "why are you nervous? Do you have something on you?"

66. Defendants then began to search Carlos Otero.

67. Though nothing illegal was found in Carlos Otero's possession, defendants placed him in handcuffs and again took him to the police precinct.

68. After approximately two hours at the precinct, Carlos Otero was told he was being

given another ticket for disorderly conduct and he was released from the precinct.

69. This second charge of disorderly conduct was brought even though defendants lacked probable cause to believe Carlos Otero had committed any crime.

70. The first ticket issued to Carlos Otero for disorderly conduct was dismissed on the basis of facial insufficiency on July 6, 2012.

71. The second ticket issued to Carlos Otero for disorderly conduct was dismissed on September 11, 2012.

72. All charges brought against Daniel Otero were dismissed on November 28, 2012 when the Court granted his motion for dismissal based upon facial insufficiency.

73. As a result of the force used against plaintiff Daniel Otero, plaintiff suffered serious physical injuries which required emergency room treatment.

74. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiffs' rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiffs.

## DAMAGES

75. As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

    a. Violation of their rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure of his person;

    b. Violation of their rights to Due Process of Law under the Fourteenth Amendments

to the United Stated Constitution;

c. Physical pain and suffering:

d. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

e. Loss of liberty;

f. Economic loss.

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983)

76. The above paragraphs are here incorporated by reference.

77. Defendants have deprived plaintiffs of their civil, constitutional and statutory rights under color of law and have conspired to deprive them of such rights and are liable to plaintiffs under 42 USC § 1983.

78. Defendants' conduct deprived plaintiffs of their right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Defendants' conduct also deprived plaintiffs of their right to due process of law, pursuant to the Fourteenth Amendment of the United States Constitution.

79. Defendants falsely arrested plaintiffs, used excessive force against plaintiffs, maliciously prosecuted plaintiffs and failed to intervene in each other's obviously illegal actions.

80. Plaintiffs have been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
(MUNICIPAL AND SUPERVISORY LIABILITY)

81. The above paragraphs are here incorporated by reference.

82. The City is liable for the damages suffered by plaintiffs as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of

plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

83. Moreover the City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, the City has failed to properly train its employees and/or ensure that they are sufficiently informed regarding the policies and procedures of the City. The defendant officers had no legal basis to arrest plaintiffs, yet were apparently unaware of or unconcerned with the fact that they were not legally permitted to seize an individual purely for the purpose of securing their testimony as a witness. This evidences a failure in the training of these officers which led to the violations of plaintiff's rights.

84. The aforesaid event was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

85. For example, the well documented failures of the Civilian Complaint Review Board

("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

86. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer.

87. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that

there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

88. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal. Furthermore, although the City has been on notice, through plaintiff's complaints to the IAB from the first day of the incidents complained of, the City has failed to remedy the wrong.

89. Plaintiffs have been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

90. The City is liable for the damages suffered by plaintiffs as a result of the conduct of its employees, agents, and servants, in that, after learning of its employees' violation of plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but have nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

WHEREFORE, plaintiffs demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiff punitive damages in an amount to be determined by a jury;

C. Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: May 8, 2013
Brooklyn, New York

Respectfully yours,

By: Nicholas Mindicino, Esq.
Bar#: NM0437
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue, Third Floor
Brooklyn, NY 11217
P: (718) 852-3710
F: (718) 852-3586
NMindicino@stollglickman.com

TO: New York City
Corporation Counsel Office
100 Church Street, 4th floor
New York, NY 10007

Officer Matthew Gale Shield #05617
C/o ACC Liza Sohn
Corporation Counsel Office
100 Church Street, 4th floor
New York, NY 10007

Officer Suriel, Shield #13059
C/o ACC Liza Sohn
Corporation Counsel Office
100 Church Street, 4th floor
New York, NY 10007

Officer Manish Sharma, Shield #10192
NYPD – 41st Precinct
1035 Longwood Ave.
Bronx, NY, 10459

Sergeant Dervent Williams, Shield #1719
NYPD – 41st Precinct
1035 Longwood Ave.
Bronx, NY, 10459

Officer Delilah Cancel, Shield #12190
NYPD – 41st Precinct
1035 Longwood Ave.
Bronx, NY, 10459